**TEXAS INDEMNITY INS. CO. v. WATSON.**

No. 11932.

Court of Civil Appeals of Texas. Galveston.

Dec. 11, 1947.

Turner, Rodgers, Winn & Scurlock, Lon Sailers and Geo. S. Terry, all of Dallas, for appellant.

Gallagher, Francis & Bean and Ralph Gillen, all of Dallas, and Kennedy & Granberry, of Crockett, for appellee.

MONTEITH, Chief Justice.

This workmen's compensation suit was brought by appellee, Alvin F. Watson, to set aside an award of the Industrial Accident Board denying compensation for injuries alleged to have been sustained by him in the course of his employment with Stanolind Oil & Gas Company, who carried compensation insurance with appellant, Texas Indemnity Insurance Company.

In answer to special issues submitted, a jury found, in substance, that appellee was

injured as alleged on May 30, 1945, while employed by Stanolind Oil & Gas Company; that such injury was total and permanent and that appellee was entitled to a lump sum payment. They found that good cause existed for plaintiff's failure to file a claim for compensation with the Industrial Accident Board within six months from the date of injury as required by law. Pursuant to such findings the court entered judgment for appellee for $7,246.73, with interest, and costs.

The court overruled appellant's motion for an instructed verdict and for judgment non obstante veredicto on the ground that appellee had failed to show good cause for failure to file his claim for compensation with the Board within the six months period required by Art. 8307, Section 4a, Revised Civil Statutes, Vernon's Ann.Civ.St. art. 8307, § 4a.

Appellant has based its appeal in this case on 2 major points:

(1) The judgment of the trial court should be reversed and rendered because of plaintiff's failure to file his claim with the Board within six months, or to show good cause for not doing so;

(2) The judgment of the trial court should be reversed and remanded because of the misconduct of a member of the jury.

The record shows that appellee, Alvin F. Watson, began his employment with the Stanolind Oil & Gas Company as a driller's helper on a seismograph crew in Houston County, Texas. He alleged, that while digging a pit for the placing of shots, on May 30, 1945, he suffered a heat stroke which caused complete and permanent disability. In his original petition, filed on June 27, 1946, appellee alleged that he filed his claim with the Industrial Accident Board within six months after the date of his injury. In its original answer, filed on July 18, 1946, appellant denied under oath that the appellee had filed his notice of injury and claim for compensation as required by Section 4a, Article 8307, Vernon's Ann.Civ. Statutes. On September 9, 1946, appellee filed an amended pleading in which he alleged that continuously since the date of his injury he had been both mentally and physically incapacitated from the transaction of any business, and that he had lacked the power of concentration, memory and capacity to collect himself for the purpose of performing any act, including the giving of notice of his injury and the filing of his claim for compensation, as a basis for proof that he had "good cause" for not filing such notice and claim. On May 26, 1945, the day before the cause was called for trial, appellant filed its amended answer, duly verified, denying under oath that plaintiff had filed a notice of injury and claim for compensation as required by said Section 4a of said Art. 8307.

Section 4a of Art. 8307, Vernon's Ann. Civ.Statutes provides that no proceeding for compensation for injury under the Workmen's Compensation Act shall be maintained unless a claim for compensation with respect to such injury shall have been made within six months after the occurrence of the injuries, but that "For good cause the board may, in meritorious cases, waive the strict compliance with the foregoing limitations as to * * * filing the claim before the board."

By counterpoint appellee contends that the verification attached of appellant's amended answer did not constitute the required denial under oath that appellee had failed to file his notice of injury and claim for compensation.

No exception to the alleged defect in the verification of appellant's answer was filed by appellee, nor did he by motion or otherwise call the alleged defect to the attention of the trial court at any time during the trial of the cause.

The Texas Rules of Civil Procedure, Nos. 67 and 90, have greatly strengthened the common law rule of waiver.

Said Rule 67 reads: "When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings * * *." Said Rule 90 reads: " * * * Every defect, omission or fault in a pleading either of form or of substance, which is not specifically pointed out by motion or exception in writing and brought to the attention of the Judge in the trial court before the instruction or charge to the jury or, in a non-jury

case, before the rendition of judgment, shall be deemed to have been waived * * *."

In the case of Bednarz v. State, 142 Tex. 138, 176 S.W.2d 562, the Supreme Court in its opinion said: "It appears to be a well-established rule that where a case has been tried without objection upon the theory that the answer of the defendant was sufficient to join issues on the facts which were contested upon the trial, an objection that it was insufficient for that purpose cannot be made for the first time in the appellate court."

In the case of Tew v. Griffith, Tex.Civ. App., 187 S.W.2d 408, this Court in construing said Rules 67 and 90, held that the omission of a pleading complained of must be treated as having been waived, where no objections were urged thereto.

In the case of Texas Osage Co-op. Royalty Pool et al. v. Kemper, Tex.Civ.App., 170 S.W.2d 849, writ refused, this court, under a state of facts almost identical with the facts in the instant case, held that under Rule 93, Texas Rules of Civil Procedure, the sufficiency of an affidavit verifying a pleading cannot be questioned for the first time on appeal, the fact that the pleading has not been verified, or that the affidavit by which it is verified is waived and the pleading is a sufficient basis for the admission of evidence in support thereof where no exception has been urged thereto.

Under these authorities appellee's contention must be overruled.

The injury on which this action is based was alleged to have occurred on May 30, 1945. Appellee filed his claim with the Industrial Accident Board on March 15, 1946, nine and a half months later.

The controlling question presented in the appeal is whether the evidence adduced on the trial of the case supports the finding of the jury that appellee showed good cause for failing to file his claim with the Board within the 6 months period provided under said Article 8307, Section 4a.

The facts supporting appellee's contention upon this issue of good cause are largely supported by his testimony bearing on his mental condition following the alleged heat stroke on May 30, 1945.

He testified that he received the heat stroke at 10:30 a. m. on May 30, 1945; that he rested for a while, then worked the rest of the day; that on the following day he was promoted from second class helper with an increase in pay and worked all day May 31 and June 1; that on June 2 he drove from Crockett to Mexia and returned to Crockett on Monday morning; that he worked as a driller's helper from June 4 to June 8, and again on June 9 drove to Mexia and returned to Crockett on Monday; that on June 9 he saw Dr. Christoffer at Mexia and told him that he had had a heat stroke; that from June 11 to June 15 he worked on the seismograph crew; and that he conferred with a Dr. Marion M. Brown at Mexia on June 21 and was examined and secured a position with the Humble Pipe Line Company. That from June 23 to June 30 he went to see Dr. Edgar at Mexia, who found him nervous but alert mentally with unimpaired memory. On July 1, 7, 9, 12, and 16, 1945, he saw Dr. Christoffer at his home office. Dr. Christoffer testified that Watson told him that he had a heat stroke, but that he found no evidence of it, or any evidence of memory loss. He testified that at that time Watson was up and around and able to file a compensation claim. On July 17 to 20, Watson drove to the Buie Clinic at Marlin and back, 55 miles away each day for four or five days. During July, Watson went to see Dr. Cromeans at Mexia who treated him for heat stroke. On October 31, appellee called on a Dr. Schwenkenberg at Dallas. From November 1 to November 17, 1945, Watson was in Dr. Schwenkenberg's sanitarium in Dallas.

The record shows that on October 30 Watson went to the Mexia office of the Texas Unemployment Compensation Commission and filled out an initial claim for unemployment compensation. He received state unemployment checks every two weeks from this time until April, 1946. On December 12, 1945, appellee engaged the services of a lawyer in Mexia to secure a divorce. The divorce was subsequently secured. On December 15, 1945, appellee filed an application for unemployment compensation at Mexia in which he stated that he was able and available for work, and on December 21 he received a warrant for un-

employment compensation from the State Treasurer in the amount of $36.00. On December 28 he again filed an application with the Mexia Unemployment Compensation Commission for continued employment benefits. On January 11, 1946, he filed claim for continued benefits with the compensation commission, and on January 15, received, indorsed and cashed a warrant therefor in the amount of $36.00. On January 25 he filed another claim for unemployment compensation and on January 28 received, indorsed and cashed a warrant therefor in the amount of $36.00. On February 8, 1946, he again applied for unemployment compensation, signing and filing a claim for continued unemployment benefits and received, indorsed and cashed a state warrant therefor in the amount of $36.00. On February 20 he again received, indorsed and cashed unemployment compensation warrant, and on the 22d of February he again went to Corsicana to the Corsicana unemployment compensation office where he signed and filed another compensation claim for unemployment benefits. On March 5 he received, indorsed and cashed another state warrant for unemployment benefits. On March 8, 1946, he filed claim with the Corsicana unemployment compensation office for unemployment compensation.

Under the above record it is undisputed that Watson continued his employment with the Stanolind Company for two weeks after the alleged stroke and that he filled out and signed several payroll sheets for his services; that on numerous occasions he drove distances of 50, 80 and 100 miles; that shortly after his injury he hired a lawyer and secured a divorce from his wife; that he filed 10 separate claims for state unemployment compensation and received, indorsed and cashed state warrants for such compensation. That he consulted 11 different doctors; that he employed an attorney to represent him in this case and signed a claim for a contract of employment.

The test of good cause for delay in filing a claim with the Industrial Accident Board is that of ordinary prudence, that is, such a course of conduct as would be pursued by an ordinary prudent person acting under the same or similar circumstances in the transaction of his own business. Texas Indemnity Ins. Co. v. Cook, Tex.Civ.App., 87 S.W.2d 830; New Amsterdam Casualty Co. v. Chamness, Tex. Civ.App., 63 S.W.2d 1058, error refused; Maryland Casualty Co. v. Merchant, Tex. Civ.App., 81 S.W.2d 794.

Grounds for good cause for delay from the viewpoint of ordinary prudence is ordinarily a fact question; but where the evidence taken most strongly in favor of the claimant admits of but one reasonable conclusion negativing good cause, the question becomes one of law. Texas Indemnity Ins. Co. v. Cook, Tex.Civ.App., 87 S.W.2d 830.

Measured by this test, and based upon an analysis of the evidence adduced upon the trial of the instant case, we think that the grounds asserted by appellee as a good cause for the delay in filing his claim are wholly insufficient under the above authorities. The fact that appellee was able to continue his work after the alleged stroke, and the fact that he was able to file 10 separate claims for state unemployment compensation and to receive, indorse and cash the warrants for such compensation, evidences, we think, the ability to comprehend the necessity for filing a notice of his claim with the Board. The above analysis of the evidence of appellee's activities, both mental and physical, after his alleged injury which required not only discretion, but certain administrative ability, admits of but one reasonable conclusion negativing good cause and the question becomes one of law. This conclusion requires that the judgment of the trial court be reversed and the cause here rendered for appellant.

Reversed and rendered.