ALVIN F. WATSON v. TEXAS INDEMNITY INSURANCE COMPANY.

No. A-1601. Decided May 5, 1948.
Rehearing overruled June 2, 1948.
(210 S. W., 2d Series, 989.)

*Kennedy & Granberry,* of Crockett, *Gallagher, Francis & Beam,* and *Ralph Gillen,* all of Dallas, for petitioner.

The Court of Civil Appeals erred in holding that there was no evidence to warrant the submission of good cause to the jury because the evidence negatived the existence of good cause for plaintiff's failure to file his claim in statutory time. Norwich Union Indemn. Co. v. Wilson, 67 S. W. (2d) 225; Traders & Gen. Ins. Co. v. Brass, 193 S. W. (2d) 848; Texas Indm. Ins. Co. v. Briggs 128 S. W. (2d) 861.

*Turner, Rodgers, Winn & Scurlock, Lon Sailers* and *George Terry,* all of Dallas, for petitioners.

The Court of Civil Appeals properly held that plaintiff waived his right to complain that defendant did not file his answer on good cause until one day before the trial, when the statute specifies ten days, because he raised such question in the appellate court for the first time. Gilkey v. Peeler, 22 Texas 663; Petroleum Cas. Co. v. Dean, 132 Texas 320, 122 S. W. (2d) 1053; Southwestern Life Ins. Co. v. Powers, 132 Texas 460, 122 S. W. (2d) 1056.

MR. JUSTICE SIMPSON delivered the opinion of the Court.

This suit was brought by Alvin F. Watson as an appeal from a decision of the Industrial Accident Board denying his claim for workmen's compensation. Watson alleged that he was totally and permanently disabled as a result of a heatstroke suffered by him on or about May 30, 1945, while working for Stanolind Oil & Gas Company, whose workmen's compensation insurance was carried by Texas Indemnity Insurance Company. His claim for compensation was filed with the Industrial Accident Board on March 15, 1946. In answer to special issues the jury found that Watson sustained the injury alleged, and that the injury totally and permanently disabled him. The jury also found that good cause existed for Watson's failure to file his claim prior to March 15, 1946, and specifically that his mental incapacity was good cause for this delay. The trial court rendered a "lump sum" judgment in favor of Watson for $7,-246.73. The Court of Civil Appeals reversed this judgment on the ground that there was no evidence to support the jury's findings on good cause, and rendered judgment for the insurance company. 207 S. W. (2d) 99.

■ Watson urges that the company failed to join issue on good cause since the verified denial contained in an amendment to the company's answer was filed only the day before the trial began, and he further insists that the answer did not contain an adequate denial of good cause. The rule provides that an allegation of good cause shall be presumed to be true unless denied by verified pleadings and that an amended pleading denying this matter must be filed not less than seven days before trial. Rule 93 (n), Texas Rules of Civil Procedure. The Court of Civil Appeals overruled this contention, correctly reasoning that Watson had waived these points. This holding is approved.

■ But the Court of Civil Appeals erred in ruling that the evidence conclusively demonstrated that Watson did not have good cause for failing to file his claim with the Industrial Accident Board within six months after his injury, as the statute requires.

This measure (R. S. Art. 8307, Sec. 4a) reads in part: "* * * No proceeding for compensation for injury under this law shall be maintained * * * unless a claim for compensation with respect to such injury shall have been made within six months after the occurrence of same; or, in case of death of the employee or in the event of his physical or mental incapacity, within six months after death or the removal of such physical or mental incapacity. For good cause the board may, in meritorius cases, waive the strict compliance with the foregoing limitations as to notice, and the filing the claim before the Board."

The jury found, in answer to one special issue, that "good cause existed" for Watson's failure to file his claim sooner, and in another, that Watson's mental incapacity comprised good cause for this delay. There was no submission of the issue of a mental incapacity such as would have postponed, under the statute, the running of the six-month claim period until the removal of that incapacity. Rather, mental incapacity was relied upon as good cause for failure to comply strictly with the requirement that the claim be filed within six months after the injury. Cf. Texas Employers' Ins. Ass'n v. Clark (Tex. Civ. App.) 23 S. W. (2d) 405, error dismissed; Texas Employers' Ins. Ass'n v. Sitcher (Tex. Civ. App.) 76 S. W. (2d) 145. In passing upon an assignment that there was no evidence to support the jury's finding that there was good cause for the tardy filing of the claim, it is elementary that the evidence must be considered in the light most favorable to the verdict, and that if there is any evidence of probative worth to support the verdict an appellate court cannot render a contrary judgment. Williamson v. Texas Indemnity Ins. Co., 127 Texas 71, 90 S. W. (2d) 1088. And, generally, it is settled that while the term "good cause" is not defined by the statute, the test for its existence is that of ordinary prudence, that is, did the injured employee prosecute his claim with that degree of diligence that an ordinarily prudent person would have exercised under like circumstances. And, "consequently, whether he has used the degree of diligence required is ordinarily a question of fact to be determined by the jury or the trier of facts. It may be determined against the claimant as a matter of law only when the evidence, construed most favorably for the claimant, admits no other reasonable conclusion." Hawkins v. Safety Casualty Co., 146 Texas 381, 107 S. W. (2d) 370, 372, and cases there cited.

Now, the evidence most favorable to the claimant here on the issue of good cause may be summarized as follows: Watson continued on the job after his injury but quit after about ten

days because, he testified, he was no longer able to work. He had a headache, was weak, dizzy and nervous, and felt like he was in a daze. He consulted a physician at Mexia on June 12, 1945, and reported he had suffered a heatstroke. The doctor treated him for a nervous condition and continued treatments at intervals for about a month. In the meantime, Watson applies to the Humble Pipe Line Company for work and was examined and passed physically by a doctor on June 21, 1945. There is no showing that he ever went to work, but about two days later was hospitalized and remained in the hospital for about six days. He complained that his memory was poor and that he lacked the power of concentration. It appears he never worked any more after leaving the Stanolind in June of 1945 except for a short time early in 1946, when he took over an ice truck but had to quit because he could not keep the accounts. He testified he did not even remember employing the attorneys who filed his claim and brought this suit. In June, 1945, a doctor advised Watson that he should consult Dr. Arthur J. Schwenkenberg, a Dallas phychiatrist. This doctor described his specialized field as dealing with nerevous and mental diseases. Watson was carried by relatives to see Dr.. Schwenkenberg on Octtober 31, 1945, and he was immediately admitted to a sanitarium because, as this doctor put it, it was obvious that he needed help. This doctor testified that Watson "was suffering from depression, it is a state of mind, he had the feeling of fear, the feeling of morbidity, the feeling of hopelessness, the feeling that he was going to die, he had all those things along with the headache." Dr. Schwenkenberg gave Watson five electric shock treatments up to November 17, 1945. In this treatment, an electrode is applied to the forehead and a current of electricity goes through the brain and produces a heavy shock or sleep and an amnesia. Ordinarily this amnesia would be of short duration, but Dr. Schwenkenberg testified that it was possible that the shock treatments might blot out for a matter of months the memory of a particular occurrence.

Watson testified he was locked up at Dr. Schwenkenberg's hospital except during recreation hours and that he had so great a fear of the electrical shock treatments that he escaped from the sanitarium about November 17th.

-    -Subsequently, up to the time of filing his claim, Watson consulted several other ·doctors, and after the claim was filed he underwent further electrical shock treatments at a Galveston hospital.

Nine lay witnesses testified in substance that Watson was

unable to carry on a connected conversation, and one of them, when pressed upon cross-examination, went so far as to say that he thought Watson was "crazy."

From the time of the injury to the trial Watson had lost some sixty pounds and was still losing.

All of this testimony obviously presents not only some but even abundant evidence of probative value in support of Watson's claim that he lacked mental capacity and the power of concentration to look after his affairs properly and that his condition presented a meritorious case in which good cause had been shown for not filing the compensation claim within six months after his injury. A jury question upon the issue of good cause was certainly raised.

The Court of Civil Appeals adverted in its opinion to evidence of respectable weight and much significance tending to negative good cause. Those circumstances, however, are not conclusive as a matter of law, but simply present countervailing evidence to that relied upon by the claimant, all of which was for the jury to weigh and appraise. It rejected the insurance carrier's position and, as has been shown, upon substantial evidence rendered a verdict in Watson's favor. Under the circumstances thus presented, this verdict must stand.

■ The following occurrence is urged by the insurance company as jury misconduct entitling it to a new trial in event its contention that it was entitled to an instructed verdict is overruled. While Watson's attorney was examining the jury panel, one of the jurors was asked if he had ever received a personal injury, and he replied that he had and showed that one of the joints of his finger had been cut off, and stated that he had never gotten anything out of it. During the second day of the trial, immediately after the judge had announced a recess and as the jury was leaving the courtroom, this juror stopped at the counsel table where Watson's attorney was standing and asked if he could get a little free advice." The attorney replied, "If I can, I will." The juror then said he was wondering if he could get any compensation for the loss of his finger. He stated that his then employer had a policy of insurance, and the attorney said, "I will have to see the policy before I can tell you whether you have any rights under it." The juror volunteered the information that he had gotten $75.00 on it, and the attorney asked him, "You signed a release?" The juror replied, "Yes, I guess it is dead when I got that $75.00," and the attorney agreed, "I guess

so." This conversation occurred before the judge had left the bench; one of the attorneys for the insurance company was standing nearby and heard its beginning but walked away while it was still in progress.

Immediately after the recess the insurance company moved for a mistrial because of this occurrence, and again urged the point in its motion for new trial. The motion was overruled.

Before the adoption of the Rules of Civil Procedure, Article 2234, R. S., had been construed to mean that when misconduct of the jury was shown, the verdict must be set aside if there was reasonable doubt as to whether the misconduct affected the decision of the jury, and it became the court's duty to vacate the verdict unless the party seeking to uphold it removed all reasonable doubt that the misconduct prejudiced the complaining party. Casstevens v. Texas & P. Ry. Co., 119 Texas 456, 32 S. W. (2d) 637, 73 A. L. R. 89. Article 2234, before being repealed by Rule 327, read: "Where the ground of the motion (for new trial) is misconduct of the jury or of the officer in charge of them, or because of any communication made to the jury or that they received other testimony, the court shall hear evidence thereof from the jury or others in open court, and may grant a new trial if such misconduct proved, or the testimony received, or the communication made, be material." Rule 327 carried forward in its entirety Article 2234 but added the following: "and if it reasonably appears from the evidence both on the hearing of the motion and the trial of the case and from the record as a whole that injury probably resulted to the complaining party." It has been held that Rule 327 had the effect of abolishing the "rule of reasonable doubt," and substituted the rule which imposes upon the party asserting misconduct the burden not only of proving by a preponderance of the evidence that the misconduct occurred but also of showing that the misconduct probably resulted in injury to him. Barrington v. Duncan, 140 Texas 510, 169 S. W. (2d) 462. And it is now also settled that it is a question of law for the court to determine whether injury has probably resulted in such a situation. City of Houston v. Quinones, 142 Texas 282, 177 S. W. (2d) 259; Maryland Casualty Co. v. Morua (Tex. Civ. App.) 180 S. W. (2d) 194, error refused.

The trial court concluded, after hearing the evidence on the motion, that no harm resulted. Although the propriety of the juror's seeking advice from the attorney under these circumstances is of course most questionable, a consideration of the incident indicates its entirely innocuous character and that in

all probability it was not likely to have influenced the juror's verdict in any way. The conclusion reached by the district judge that this was the case will be respected.

The insurance company urges that the holding in Texas Milk Products Co. v. Birtcher, 138 Texas 178, 157 S. W. (2d) 633, compels a remand of this case. Aside from other distinctions which might be drawn, it is sufficient to observe that although the Birtcher opinion was handed down after Rule 327 went into effect, this case was tried before the effective date of that rule and while Article 2234 was still unrepealed. Sproles Motor Freight Lines v. Long, 140 Texas 494, 168 S. W. (2d) 642; Cloudt v. Hutcherson (Tex. Civ. App.) 175 S. W. (2d) 643, error refused want of merit. After having found misconduct, the court in the Birtcher case applied the so-called rule of reasonable doubt, which no longer obtains in this State.

No reversible error is presented by this contention.

The judgment of the Court of Civil Appeals is reversed and that of the trial court is affirmed.

Opinion delivered May 5, 1948.

Rehearing overruled June 2, 1948.