**J. L. SWARTOUT et ux., Appellants,**

**v.**

**R. D. HOLT et al., Appellees.**

No. 3192.

Court of Civil Appeals of Texas.
Waco.

Oct. 14, 1954.

Rehearing Denied Nov. 24, 1954.

Fitzpatrick & Dunnam, W. V. Dunnam, Jr., Waco for appellants.

B. F. Word, Meridian, C. O. McMillan, Stephenville, for appellees.

TIREY, Justice.

Appellants brought this action for damages grounded on allegations of malpractice against Drs. R. D. Holt and J. T. Archer, Jr., physicians and surgeons engaged in the practice of medicine as partners in Meridian, Texas. Appellants alleged that in February, 1952, Mrs. Swartout took her fifteen year old daughter, Elvira Louise, to the hospital and clinic of appellees for medical attention; that their daughter complained of pain in her abdomen and side, and appeared to be slightly nauseated; that appellee, Dr. R. D. Holt, examined the child and advised submission of the child to operative surgery, and a date was set for 8:00 o'clock p. m., February 28, 1952; that the mother at that time advised Dr. Holt that they objected to the use of ether as an anesthetic and explained fully to him

the results of a prior operation, at which time the child had undergone a tonsillectomy and that the physician performing the operation had used ether as an anesthetic and the child had collapsed and "passed out" while they were attempting to bring her under the effects of ether, and that it was necessary for the doctor doing the tonsillectomy to give her oxygen and artificial respiration in order to revive her; that Dr. Holt then explained to the child that he would give her a spinal anesthesia; that Dr. Holt failed to heed the advice and warning that plaintiffs had given to him concerning the child's sensitivity to ether, and breached his promise to plaintiffs that he would not give the child ether, in that when she was taken to the operating room the patient was given ether by Dr. Holt, and as a proximate result of giving the child ether she suddenly "became cyanotic and cardiac arrest occurred, causing her to cease respiration, and as a proximate result of said ether she died in defendant's hospital on the 2nd day of March, 1952." Appellants specifically alleged ten separate grounds of negligent conduct proximately resulting in death to their child. It is our view that only (a) is pertinent here: "(a) defendants deliberately and wilfully failed and refused to consider and heed the warning that said child was sensitive to and could not take ether without imminent danger of death as a result thereof."

The appellees denied the allegations contained in plaintiffs' pleading and further specially answered in part, " * * * these defendants say that if plaintiff, Gladys Swartout, did in fact know at the time she brought the child, Elvira Louise Swartout, to the defendants for an operation, that said child was allergic to ether as alleged in plaintiffs' petition, she, the said plaintiff, did not so advise these defendants, * * * and that her failure to so advise these defendants was negligence, which negligence was a proximate cause of whatever injury may have resulted to said child from the use of ether as an anesthetic."

The jury, in its verdict, found that Dr. Holt, prior to the time he began the ad-ministration of ether to the patient, was not informed by her mother of her previous tonsil operation and the effect and the result of the administration of ether to her at the time of such tonsil operation; that plaintiff, Gladys Swartout, failed to advise Dr. Holt fully that her daughter was allergic to ether prior to the time Dr. Holt began the administration of the ether in preparing for the operation; that the failure of the plaintiff, Gladys Swartout, to advise Dr. Holt that her child was allergic to ether was not negligence; that the death of the child was the result of an unavoidable accident; that the plaintiffs have not suffered actual pecuniary loss as a proximate result of their daughter's death.

The judgment followed the verdict of the jury and the decree provided that plaintiffs take nothing by their suit against appellees, and awarded all costs against plaintiff, J. L. Swartout. Plaintiffs seasonably filed their amended motion for new trial, which was overruled, and they have perfected their appeal to this court. Appellants have assailed the judgment entered by the trial court on what they designate as ten points. We think that Point 2 only is pertinent here and it will hereafter be stated and discussed.

■ Our Supreme Court in the recent case of Bowles v. Bourdon, Tex.Sup., 219 S.W.2d 779, 782, made this statement of the rule: "It is definitely settled with us that a patient has no cause of action against his doctor for malpractice, either in diagnosis or recognized treatment, unless he proves by a doctor of the same school of practice as the defendant: (1) that the diagnosis or treatment complained of was such as to constitute negligence and (2) that it was a proximate cause of the patient's injuries. [Citing many cases.]" Our Supreme Court has not seen fit to change the rule here stated and we think it is applicable and controlling here in view of the pleadings and the findings of the jury. See also opinion of this court in Christian v. Galutia, Tex.Civ.App., 236 S.W.2d 177 (n. r. e.).

As we understand appellants' cause of action, it is grounded solely on the theory that Mrs. Swartout fully explained to Dr. Holt the nature, symptoms and all the reactions that her daughter had when she had the tonsillectomy performed on her in 1942. The case was fully developed and the trial court submitted the cause to the jury on such theory. We have given much consideration to this cause and have made a most careful examination of all of the testimony tendered, and it is our view that the evidence is sufficient to sustain the answers of the jury thereto. We are of the further view that the court's charge correctly submitted the cause to the jury. Therefore, the judgment appealed from must be affirmed unless appellants have been denied their constitutional right of having their cause submitted to a fair and impartial jury, which will be hereafter discussed.

Appellants' Point 2 is: "The court erred in overruling appellants' motion for new trial because the jury trying the case was not an impartial jury." This question has given us much concern because of the factual situation which we will hereafter state fully.

This appeal is from a judgment entered in the second trial. The jury in the first trial being unable to agree, the court declared a mistrial. As we understand appellants' Point 2, it is to the effect that under all the facts and circumstances they were deprived of that fair and impartial trial by jury as provided by our Constitution and Statutes because the proper tribunal was not established to try their cause owing to the fact that C. E. Dansby was not a fair and impartial juror under all the facts and circumstances. This phase of the case does not fit into any particular pattern and because the error complained of is grounded solely on Bill of Exception No. 1, we have copied substantially all of the pertinent parts of the bill, together with the court's qualifications thereon:

"None of the voir dire examinations of either party of said C. E. Dansby touching his qualifications as a juror was transcribed or taken down by the court reporter, and the court had and has no recollection of the questions propounded to said C. E. Dansby during said examination, nor the answers thereto given by him * * * upon the hearing of plaintiffs' first amended motion for new trial * * * W. V. Dunnam, Jr. (attorney for plaintiffs) testified that said juror, C. E. Dansby, testified on * * * voir dire examination by plaintiffs that he had never discussed this case with anyone and that he had no interest therein. * * * W. L. Gandt testified that this case was tried in this court at a former term approximately six months prior to the 9th of November, 1953, which trial resulted in a mistrial by reason of a hung jury; that he, the said W. L. Gandt, sat as a juror upon said trial, which resulted in a mistrial; that said former trial in which he sat as a juror lasted for three days; that at the conclusion of the first day's testimony, he and the other eleven jurors were permitted to go to their homes over night and that while at his home on said night the said C. E. Dansby telephoned him and attempted to discuss with him this case but that he, the said W. L. Gandt, told the said C. E. Dansby that he was on his honor not to discuss the case and his opinions thereof. B. H. Ekrut testified at said hearing on plaintiffs' first amended motion for new trial that he had discussed this case with the said C. E. Dansby prior to the 9th day of November, 1953. R. D. Holt, a defendant herein, testified that the wife of the said C. E. Dansby had in the past served as head nurse in his hospital * * * that C. E. Dansby was not called as a witness by either party at said hearing on plaintiffs' first amended motion for new trial, and no testimony or evidence was offered or admitted in rebuttal of or impeachment of or contradiction of any of the above testimony adduced at said hearing."

The Court qualified the foregoing bill as follows:

"Counsel in his examination of the jurors did not inquire if any of their

families had worked at the Holt Hospital. The language of the bill stating that the juror Dansby had talked about the case is not full enough and I have had the court reporter to copy the testimony on this point that was offered by plaintiffs and attach it hereto and make it a part of this bill."

The testimony attached to the Bill of Exception is:

"My name is W. L. Gandt, and I live at Valley Mills.

"Q. Were you a member of the first jury that tried this case during the April term of this court? A. Yes, sir.

"Q. That was a hung jury? A. Yes, sir.

"Q. I believe that the first day, about one-half of the evidence was offered and the court adjourned and permitted the jury to go to their homes and return the next morning, is that correct? A. I believe so.

"Q. Did you go to your home that night? A. Yes.

"Q. Did anyone come to your house that night and bring up the subject of that case on which you were sitting as a juror? A. No, sir, did not come to my house.

"Q. Did anyone phone you that night? A. Yes.

"Q. Who? A. Mr. C. E. Dansby.

"Q. Was he one of the jurors at this last trial? A. That I don't know.

"Q. He resides at Valley Mills? A. Yes, sir.

"Q. Is he the only Mr. Dansby that you know of that resides at Valley Mills? A. Yes, sir.

"Q. Did he attempt to discuss this case with you or ask you about the case that night? A. Yes.

"Q. Did you refuse to discuss it? A. I told him that I had my honor that I would not discuss it with anyone."

"My name is B. H. Ekrut and I live at Valley Mills.

"Q. Are you acquainted with C. E. Dansby, who resides at Valley Mills? A. Yes, sir.

"Q. Do you remember stating that you were not present for the trial but if you had been present you would have been disqualified to sit on the jury? A. I think I would, yes. * *

"Q. Before the last trial of this case how many times had C. E. Dansby mentioned or discussed this case with you? A. I can't say for sure, one time far as I know, and that was right after the first trial.

"Q. He informed you what he considered the facts of the case? A. No,—I think you are a little mixed up about it,—we talked about the case, but where I got my facts was from other sources.

"Q. What did Mr. Dansby talk about the case? A. I can't tell you, don't remember the exact conversation. We just discussed it. I don't remember what the exact words were, been so far back, just don't remember. Where I got my facts, the reason I thought I would be disqualified on the case, was from other sources than C. E. Dansby.

"Q. You had a discussion of this case with C. E. Dansby? A. We discussed it some but did not express any particular opinion at the time that I remember * * *

"Q. Are you a personal friend of Mr. Dansby? A. Yes, might say I was a personal friend. * * *

"Q. When you discussed that case with Mr. Dansby did he bring up the subject? A. I don't remember.

"Q. That was right after the first trial? A. That was right after the first trial if I remember right."

■ The right of a citizen to have his cause submitted to a fair and impartial jury is a valuable right and one which is guaranteed to him under the Constitution and laws of this state, and the framers of our Constitution and our Legislature have provided many safeguards to guarantee to a citizen a fair and impartial trial by jury. Sec. 15 of Art. I of our State Constitution, Vernon's Ann.St., as amended in August, 1935, provides in part: "The right of trial by jury shall remain inviolate. The Legislature shall pass such laws as may be needed to regulate the same, and to maintain its purity and efficiency." Art. 2134, Vernon's Ann. Civil Stats. provides in part: "The following persons shall be disqualified to serve as jurors in any particular case: * * * 2. Any person interested, directly or indirectly, in the subject matter of the suit. * * * 4. Any person who has a bias or prejudice in favor of or against either of the parties. * * *" The foregoing provision of our statute was not changed by the new rules. Rule 228, Texas Rules of Civil Procedure, provides: "A challenge for cause is an objection made to a juror, alleging some fact which by law disqualifies him to serve as a juror in the case or in any case, or which in the opinion of the court, renders him an unfit person to sit on the jury. Upon such challenge the examination is not confined to the answers of the juror, but other evidence may be heard for or against the challenge." Rule 327, T.R.C.P., provides "Where the ground of the motion is misconduct of the jury or of the officer in charge of them, or because of any communication made to the jury or that they received other testimony, the court shall hear evidence thereof from the jury or others in open court, and may grant a new trial if such misconduct proved, or the testimony received, or the communication made, be material, and if it reasonably appears from the evidence both on the hearing of the motion and the trial of the case and from the record as a whole that injury probably resulted to the complaining party."

■ Under our procedure it is provided that the court and the attorneys for the parties, under the direction of the court, may interrogate the members of the jury panel for the purpose of ascertaining their fitness for jury service and under our practice our trial courts have been very liberal in permitting inquiry of the panel on voir dire examination. There is nothing in the record to indicate that the trial court in any wise limited or restricted counsel for appellants in their voir dire examination of C. E. Dansby. Needless to say that in the trial of a civil case, the voir dire examination by the parties may be waived if they desire to do so.

Going back to the Bill of Exception, we find that it does not state the exact questions that were propounded to Dansby, nor his exact answers thereto. The bill states that attorney Dunnam testified that Dansby, on voir dire examination, testified that he had never "discussed" this case with anyone and that he had no "interest" therein. It is true that the bill shows that Dansby called the juror Gandt over the telephone, but the bill fails to show what Dansby said to Gandt and the only part of the conversation we have in the record is by Gandt where he said: "I told him I had my honor that I would not discuss it with anyone." The bill also shows that Dansby had a conversation with Ekrut shortly after the first trial, but the bill fails to show what was said in this conversation. Since we do not have what was said in the conversation by Dansby to Gandt when he called him over the telephone, and since we do not have the exact question propounded to Dansby by counsel, we cannot say, without assuming, that Dansby made an erroneous answer to the question propounded to him. Since the witness Gandt said that when he called him he refused to discuss the matter with him, Dansby could have truthfully answered that he had no discussion with Gandt. Moreover, since we do not have the voir dire examination of witness Dansby before us, we cannot say as a matter of law that it was sufficient to refresh his memory and call his attention to the conversation he had with Gandt or Ekrut. We find nothing in the examination of Gandt and Ekrut, except suspicion, that

indicates that Dansby had any bias or prejudice unless we assume that he did have.

We think that an appellate court must take judicial knowledge that witnesses, during their examination sometimes without any fault on their part, forget facts and circumstances until their attention is directed to the facts or circumstances about which inquiry is being made. Very often the manner of examination, as well as the length of the examination, may have some effect in determining whether or not the witness being interrogated has made a full and fair disclosure of all the facts he knows concerning the matter inquired about.

In appellants' bill we find that he uses the word "interest" and says in effect that Dansby testified that he had no interest in this case. The word "interest" as defined in Funk & Wagnalls New Standard Dictionary is: "(1) to excite the sympathy, curiosity, or attention of; awaken the interest of * * * (2) to induce to participate; cause to take a share; concern; engage * * * (3) originally, to be of advantage to; be to the interest of." Here again, we do not have the exact question propounded to Dansby. There is no doubt that counsel who was examining the juror was inquiring as to the interest (assuming that such word was used in the question) of the juror to ascertain if he knew of any fact or facts or circumstances that would affect the juror's qualifications to serve as a juror. There is nothing in the record to indicate that counsel explained to the juror that he was not inquiring as to whether or not the juror had any interest in the financial outcome of the case, but on the contrary he was trying to ascertain whether there was anything in the mind of the juror that would cause him to be biased or prejudiced in behalf of plaintiffs or defendants. Since we do not have before us the exact question propounded to Dansby, we have no way of knowing what the word "interest", if used in the question, may have meant to him and we cannot say that his answer thereto was incorrect.

The Bill of Exception shows that Dr. Holt, one of the defendants, testified on the amended motion for new trial that the wife of C. E. Dansby had in the past served as head nurse in his hospital. There is nothing to indicate the exact time or the length of employment of Mrs. Dansby, nor why such employment was terminated, and by reason thereof we cannot assume that such employment prejudiced the juror Dansby in favor of appellees. The court qualified the bill to the effect that counsel did not inquire of the jurors if any of their families had worked in the hospital. Moreover, appellants' amended motion for new trial does not allege when appellants first learned that the juror Dansby had undertaken to talk with the juror Gandt or with the witness Ekrut and no proof was tendered as to when the appellants first learned thereof, nor does such motion allege that if all of these facts and circumstances had been known to them that they would have challenged Dansby for cause.

Going back to Rule 327, we think that it was intended to give some discretionary power to the trial court in granting or refusing a motion for new trial. Under the record before us, we cannot say that the trial court abused his discretion. As we understand the trial court's qualification made on the Bill of Exception, it is to the effect that appellants had not shown that the juror Dansby was guilty of misconduct. If a question of fact was presented, it was the duty of the trial court to make a finding thereon, and this he has done by overruling their motion for new trial. See Motley v. Mielsch, 145 Tex. 557, 200 S.W.2d 622, points 2–3. Nor can we say as a matter of law from a review of the trial of the case and the record as a whole and the hearing on motion for new trial that injury probably resulted to the complaining party. See Barrington v. Duncan, 140 Tex. 510, 169 S.W.2d 462; Watson v. Texas Indemnity Ins. Co., 147 Tex. 40, 210 S.W.2d 989.

It follows from what we have said that appellants have failed to carry their burden

of showing that they were entitled to a new trial by reason of the alleged misconduct of the juror Dansby. We find no reversible error in the record.

Accordingly, the judgment of the trial court is affirmed.