Jack R. McILROY, Appellant,

v.

Burl WAGLEY, Individually and d/b/a Wag-
ley Lumber Company, a/k/a Walco, and
James William Brown, Appellees.

No. 436.

Court of Civil Appeals of Texas.

Corpus Christi.

Dec. 31, 1968.

Rehearing Denied Jan. 23, 1969.

**6**

Law Offices of William R. Edwards, Lee Arnett, Kleberg, Mobley, Lockett, & Weil, J. Michael Mahaffey, Corpus Christi, for appellant.

Lewright, Dyer & Redford, Walter M. Lewright, James W. Wray, Jr., George Brin, Corpus Christi, for appellees.

## OPINION

GREEN, Chief Justice.

This is a suit for personal injuries resulting from a car-truck accident, brought by appellant Jack R McIlroy against appellees Burl Wagley, d/b/a Wagley Lumber Company, or WALCO, owner of the truck, and James W. Brown, driver of the truck and admittedly an employee of Wagley acting within the scope of his employment. Judgment after a jury verdict was rendered that appellant take nothing. Two intervenors whose interests are similar to those of appellant also filed appeal bonds. We use the term appellant as referring to McIlroy.

The accident occurred about 9:00 o'clock A.M. January 23, 1967 at the intersection of U.S. Highway 181 and Beach Street north of the high bridge across the ship channel in Corpus Christi, Texas. The morning was foggy and visibility was limited to approximately 600 feet or less. At this intersection, and at all places here pertinent, No. 181 is a divided highway with two main traffic lanes north bound and two lanes south bound, a left turn lane and a parking lane north and south. The north bound lanes are separated from the south bound lanes by a median whose continuity is broken at this intersection to permit entrance into Beach Street. The accident happened in the north bound roadway when appellant McIlroy, driving north in the north bound

lane, ran into Brown's truck which had turned east from the south bound roadway into the intersection and was at the time of the accident attempting to cross said portion of the highway. Basically, there are two versions of the accident as shown by the evidence.

Appellant-plaintiff McIlroy testified generally as follows: He was travelling about 45 miles an hour in the east lane of traffic northbound on Highway 181. When he was about 200 feet from the intersection with Beach Street, he saw the truck in question entering the intersection and applied his brakes. He skidded a little ways, saw that he was not going to be able to stop on the wet road surface, and let up on his brakes and turned into the center lane to try and pass behind the trailer. When he saw that he couldn't do that, he again applied his brakes, and skidded into the trailer about even with the rear wheels. Photographs of his car showed extensive damage to the front end.

Appellant called as his witness John Bentley, who qualified on the stand as an accident reconstruction expert. His testimony was based on his having visited the scene several months after the accident where he made numerous measurements of the intersection and inspected the highway generally and upon his study of a number of photographs taken about 15 to 30 minutes after the occurrence of the accident. From such inspection and studies, he made and testified to various calculations as to distance, reaction time, stopping distance, comparative location of the vehicles, the speed of the car and of the truck at various stages of their travel after perception point, i. e. the starting point of the reaction period, velocity speed in feet per second of each vehicle at various stages after perception, and other matters. He prepared a scale plat of the scene which was introduced in evidence as PX-33 and gave testimony based upon it as well as on other exhibits.

His testimony and deductions basically were:

Appellant was driving towards the north at 45.1 miles per hour, or 66 feet per second. About 185 feet from the point of impact, he perceived the truck, travelled 49.6 feet during the reaction time, skidded 46 feet in the east lane of the roadway, released the brake and turned into the center lane for 49 feet, and skidded another 40 feet, striking the truck at a speed of 27.55 miles per hour. From the time appellant entered the intersection until the collision, 3.273 seconds elapsed. The positions of the truck and car numbered on PX-33, shown herewith as prepared and testified to by Bentley (with some added identification notes) are: (1) Point of perception of truck by plaintiff; (2) point where car brakes first applied; (3) point where car brakes released; (4) where car brakes re-applied; (5) point of impact. The distance between objects or places were as shown on the plat at the scale of 1 inch equals 30 feet. If the truck driver had seen appellant and had reacted at the time appellant first saw the truck, the truck would have stopped 4½ feet in the center lane. The truck travelled 22 feet after the driver saw the approaching car, a time elapse of 1.325 seconds. If the car had been as far away as the truck driver testified when he first saw it, appellant would have to be driving more than 200 m. p. h. to cover the distance to the collision. Bentley placed the truck's speed at 12.71 m. p. h. (18.65 feet per second) at point of impact and 3 to 5 m. p. h. at entrance of intersection. The trailer of the truck was moved 12 feet by the collision. At 60 miles per hour, a car moves 88 feet per second. (See plat)

Defendant Brown, the truck driver, testified in substance that he was proceeding south on the highway, intending to turn left at the Beach Street intersection to gas up at a Shamrock service station situated on the access road east of the highway, and just north of Beach Street. As he approached the Beach Street intersection, he pulled into the left turn lane and stopped to let northbound traffic pass. When he had satisfied himself that no more cars were coming from the south, he made the left turn and "eased up to the highway and looked, and nothing was coming" so he entered the intersection at an estimated speed of from 2 to 4 miles per hour, accelerating his speed to about 9 or 10 miles per hour at point of impact. He observed the approaching car lights coming out of the fog when the front of his cab was near or in the center of the inside traffic lane and when the car, so he estimated, was about 450 feet away and in the inside lane. The lights of his truck, front, rear, and side were on. He had travelled about 61 feet in the intersection when he was hit. He estimated that he travelled between 22 and 30 feet after he first saw the car before the collision. His trailer which when empty weighed 11,000 pounds was knocked about 12 feet to the north by the impact, causing the truck to partly jackknife. The posted speed limit was 50 m. p. h. Brown had been driving on Highway 181 at 45 m. p. h., which he considered a safe speed where the fog was light, but he stated that while driving through heavy fog he slowed down to 30–35 miles per hour.

Bobby Green, manager of the Shamrock station, testified: He saw the truck waiting for the traffic to clear, saw him make his turn, and after the truck had entered the intersection and the front was about in the center lane he saw the headlights on appellant's car about a block or a block and a half away, or about 400 feet from the intersection in the inside lane emerging from the fog. He could not see the car through the fog when the truck entered the intersection. When the car was about 100 to 150 feet from the truck, at which time the front end of the truck was at the east median line of the intersection, Green anticipated a collision, and started running toward the truck. He verified Brown's testimony that the lights of the truck were burning. He expressed his opinion that the car was travelling at a speed of approximately 70 miles per hour when he first saw it, and that it never slowed its speed. The

driver of the car did not appear to have turned the car, but went straight into the the back wheels of the trailer. When the car hit the trailer, it moved the trailer causing the truck and trailer to half jack-knife. He saw no skid marks around the car. All testimony by defense witnesses regarding time, distance, and speeds was given as estimates only.

In response to special issues on the liability questions, the jury answered as follows: (1) refused to find that Brown failed to make proper application of his brakes; (2) unanswered; (3) refused to find that Brown failed to keep a proper lookout; (4) unanswered; (5-A)[1] Brown failed to stop at the intersection of Beach Street and the northbound lanes of Highway 181 before entering such intersection; (5) refused to find that at the time Brown entered the said intersection, appellant was approaching such intersection so close as to constitute an immediate hazard; (6) refused to find that Brown failed to yield the right of way to appellant; (7) appellant failed to yield the right of way to Brown; (8) unanswered; (9) unanswered; (10) appellant's failure to yield the right of way was negligence; (11) and a proximate cause of the collision; (12) appellant at and prior to the time of the collision was driving at a rate of speed in excess of what an ordinary prudent driver in the exercise of ordinary care would have driven under the same or similar circumstances; (13) which was a proximate cause of the collision; (14) appellant failed to keep a proper lookout; (15) which was a proximate cause of the collision; (16) refused to find that appellant failed to make proper application of his brakes; (18) or that his failure to drive to the left of the truck was negligence; (20) or that he was acting in an emergency.

Since the jury found no primary acts of negligence against the truck driver, and three series of contributory negligence proximately causing the collision against appellant, a take-nothing judgment was rendered by the trial court.

Appellant's first point alleges misconduct of the jury foreman Ball in communicating his special knowledge of interception problems to the jury. Appellees' reply that the alleged activities of juror Ball did not constitute misconduct, did not probably result in injury to appellant, and were not material to the jury's answer to several series of special issues, any series of which would have justified the take-nothing judgment.

1. The court gave the following instructions to the jury concerning the right of way issues:

In connection with the following Special Issues Nos. 5A to 11, all inclusive, you are instructed that the driver of a vehicle approaching an intersection with a through highway such as Highway 181, is required to stop at the entrance to such through highway and yield the right-of-way to other vehicles which have entered the intersection or which are approaching so closely on said through highway as to constitute an immediate hazard, but said driver, having so yielded, may proceed and the drivers of all other vehicles approaching the intersection on said highway shall yield said right-of-way to the vehicle so proceeding into or across the through highway.

You are further instructed that the term "So close as to constitute an immediate hazard" is determined by whether or not an ordinarily prudent person, acting with ordinary care, would reasonably have concluded that he could not pass the intersection without danger of collision.

You are further instructed that the term "Intersection" is the area embraced within the prolongation or connection of the lateral curb lines or, if none, the lateral boundary lines of the roadways of two highways which join each other at or approximately at right angles.

You are further instructed that where a highway includes two roadways thirty feet or more apart, as in the case of U. S. Highway 181 at the place where the collision in question occurred, then every crossing of each roadway of such divided highway by an intersecting highway shall be regarded as a separate intersection.

Bearing the foregoing instructions in mind, you will answer the following special issues.

Having raised the issue of jury misconduct by attaching an affidavit of juror Sharp to the motion for new trial, appellant was entitled to offer evidence of such alleged misconduct. At the hearing on appellant's motion, juror Sharp testified that while the lookout, right-of-way, and speed issues were being discussed, a disagreement arose between the jurors as to how long it took the truck to get from entrance of the intersection to the point of collision. Sharp testified on this as follows:

"Q  And who was it that was leading—or who was it in the discussion on this disagreement that you can recall.

A  Well, to the contrary of what I was discussing Mr. Ball brought up his opinion of it.

*    *    *    *    *    *

Q  In the beginning, when the matter first came up, how did Mr. Ball lead into his side of the argument?

A  Mr. Ball said he concluded nine seconds elapsed.

Q  Did he state any basis for his conclusion?

A  He said according to his computation he figured that.

Q  Did he give the jury any reason as to why he made the computation?

A  He said he ran across many problems like this in his work.

Q  What sort of problems?

A  I believe he called them interception problems.

Q  Did he tell you how it came up?

A  Yes, he did.  He said the speed of the truck at the time of the impact would give the speed at entrance into the intersection.  I believe we all agree the truck was going at a slow rate of speed, a couple of miles or so.

*    *    *    *    *    *

Q  What did Mr. Ball argue the nine seconds meant?

A  Since nine seconds elapsed while the truck reached the intersection the car had to be completely out of sight when the truck entered the intersection.

Q  Any question as to whose fault it was, Mr. Ball didn't relate that to the nine seconds?

A  What was that?

Q  Was there any question the jury was asked to answer concerning whose fault the accident was, or whether one party or the other was guilty of some act or omission of negligence which proximately caused the collision to which Mr. Ball then related the nine seconds that elapsed?

A  I believe the nine seconds were related to what he was trying to argue.  He said since it took nine seconds according to him the car was out of sight and therefore it was the car's fault because it could not have covered it in nine seconds.

Q  Did Mr. Ball indicate to the Jury any facts in evidence from which he secured the nine seconds figure?

A  No, sir.

*    *    *    *    *    *

Q  Did Mr. Ball point out any particular facts in the  record which he said supported that nine seconds, or he said he based that nine seconds on?

A  The only thing he pointed out himself, he based his calculation on the truck doing twelve miles an hour at the point of impact.

*    *    *    *    *    *

Q  After he explained to you how he calculated the nine second interval did he point out any evidence in the record, other than the twelve mile an hour speed at the point of collision on the part of the truck?

A No, sir."

Sharp was the only witness who testified at the hearing on the motion for new trial.

The burden was on appellant to establish (1) that misconduct of the juror Ball occurred (2) which was harmful to appellant to the extent that it was reasonably calculated to and probably did cause the rendition of an improper judgment. Rules 327, 434, Texas Rules of Civil Procedure; State v. O'Dowd, 158 Tex. 348, 312 S.W.2d 217, 219; Mrs. Baird's Bread Company v. Hearn, 157 Tex. 159, 300 S.W.2d 646; Warren v. Dikes, Tex.Civ.App., 404 S.W.2d 946, n. w. h. Where misconduct is proved to have occurred, the question of whether such misconduct was harmful to the extent above stated is a law issue for the court to determine. Watson v. Texas Indemnity Ins. Co., 147 Tex. 40, 210 S.W.2d 989. There being no conflicting testimony introduced at the hearing on the motion for new trial, we assume the facts to be as testified to by juror Sharp. Garcia v. Phoenix Assurance Company of New York, Tex.Civ.App., 376 S.W.2d 77, syl. 1, wr. ref. n. r. e. It is our responsibility to determine (1) whether the facts establish misconduct and (2) whether such misconduct, if it was established, was harmful to appellant to the extent stated above.

The evidence on the trial involved relative speeds, distances, and time intervals as well as special conditions due to a wet roadway and limited visibility caused by fog, in connection with the actions of Brown and of appellant McIlroy. The matter of the length of time the truck was in the intersection became important in determining the right of way, speed and look-out issues. As stated by juror Sharp, the jurors were in disagreement among themselves on these issues. They are shown by Sharp's testimony to have concluded that the truck entered the intersection at about 2 m. p. h. Juror Ball decided, and there was evidence to support his decision, that the truck had accelerated to a speed of 12 m. p. h. at point of impact. Depending on whether one believed the evidence of Bentley and his chart (PX 33) drawn to scale or the evidence of Brown and witness Green, it appears that the front end of the truck had moved from 50 to 61 feet to point of impact from entrance into the intersection. An average rate of speed somewhere between 2 and 12 m. p. h. could be estimated, and any estimate the jurors arrived at between those figures would be based on evidence. Bentley's testimony also disclosed that a vehicle moves 1.47 feet per second when being driven at one m. p. h. It was merely a matter of arithmetic for a juror to reach a conclusion from the evidence on these matters, and to come to an estimate such as that reached by Ball and discussed with the other jurors. Such calculations are not forbidden by any rules of procedure when based on or supported by the evidence, and do not constitute misconduct. Solana v. Hill, Tex.Civ.App., 348 S.W.2d 481, wr. ref. n. r. e; Luby v. City of Dallas, Tex.Civ.App., 396 S.W.2d 192, wr. ref. n. r. e. While we do not know what calculations were made by juror Ball, and although juror Sharp testified that Ball never revealed to him or to the other jurors the facts used in his computation, *there is no evidence of any kind that Ball used any fact or figure not properly before the jury.* The burden was not on appellee to show that there was no misconduct in the jury room; the burden of establishing misconduct was upon appellant.

The matter of the accuracy of Ball's calculations is not material on the issue of misconduct. As stated in Akers v. Epperson, 141 Tex. 189, 171 S.W.2d 483, 486, op. adopted by Sup.Ct.:

"* * * If it be granted that the finding in question was based upon illogical reasons, or that erroneous conclusions were drawn from the evidence, that, without more, would not constitute misconduct. In the absence of overt acts of misconduct it is not permissible to 'probe the minds of jurors or supervise their process of reasoning'. * * *"

See, to the same effect, Griffith v. Hudspeth, Tex.Civ.App., 378 S.W.2d 153, n. w. h.

Appellant also argues that juror Ball made certain statements with regard to his personal experience in dealing with problems of this kind. Nowhere does the testimony of juror Sharp show that Ball ever recounted to the jurors, or any of them, any of the details of such experience or any specific aspect of his experience. The mere mention by Ball that he had some experience in this type of matter was not misconduct. Akers v. Epperson, supra.

Having found that the testimony of juror Sharp was insufficient to establish jury misconduct, it is not necessary to further prolong this opinion in discussing whether the quoted remarks by Ball probably caused the rendition of an improper verdict and judgment. We will say that in view of all of the evidence and the answers of the jury to all of the liability issues, we would not feel authorized to reverse this cause on the issue of harmful conduct of the jury, even if the conduct should be considered improper. Rules 327, 434, T.R.C.P.

Appellant's first point is overruled.

■ By its points Nos. 2, 3, 4, 6, 8, 10 and 12, appellant contends that the trial court erred in failing to instruct the jury, as appellant requested it to do, that Brown had, as a matter of law, failed to yield the right of way, and in submitting special issues, 5, 6, 7, 10, and 11 allowing the jury to pass upon the question of right-of-way. These are all "no evidence" points. Appellant argues that since Brown admittedly failed to stop after he had made his left turn, and before entering the north bound roadway, he as a matter of law failed to yield the right of way, and that the trial court should have so found.

The situation here is controlled by Art. 6701d Sec. 73(a), Vernon's Ann.Civ.St., and Sec. 14(a), the pertinent provisions of which were included in the court's instructions to the jury accompanying the right of way issues. See Footnote 1, supra. Sec. 73(a) provides that a driver "shall stop as required by this Act at the entrance to a through highway" and then provides that the driver "shall yield the right-of-way to other vehicles which have entered the intersection from said through highway or which are approaching so closely on said through highway as to constitute an immediate hazard * * *." Appellant would have been entitled to a series of negligence and proximate cause issues concerning Brown's failure to stop at the intersection, but waived his right by not requesting such issues. Under the provisions of Sec. 73(a), Brown did not fail to yield the right of way to any vehicle unless said vehicle had entered the intersection before Brown entered, or unless it was approaching so closely on the highway as to constitute an immediate hazard. The evidence was without dispute that appellant was not within the intersection when Brown entered it. The testimony of Brown and the witness Green raised the "hazard" fact issue. The court properly submitted special issue No. 5 requesting whether at the time Brown entered the intersection (of the north bound traffic roadway and Beach Street) appellant was approaching so close as to constitute an immediate hazard, and the succeeding issues 6 to 11 inclusive. McWilliams v. Muse, 157 Tex. 109, 300 S.W.2d 643; Lynch v. Ricketts, 158 Tex. 487, 314 S.W.2d 273. The evidence heretofore summarized was legally sufficient to authorize such issues. Appellant's points 2, 3, 4, 6, 8, 10 and 12 are overruled.

■ We likewise find the evidence to be *factually* sufficient to support the jury's findings that Brown, the truck driver, did not fail to yield the right of way (issues Nos. 5 and 6) and that appellant did so fail, which failure was negligence and a proximate cause of the collision (issues Nos. 7, 10, and 11). Factual insufficiency of the evidence to support such findings is alleged in appellant's points, 5, 7, 9, 11, and 13.

In connection with the right of way issues, the court gave the following instruction:

"You are further instructed that the term 'so close as to constitute an immediate

hazard' is determined by whether or not an ordinarily prudent person, acting with ordinary care, would reasonably have concluded that he could not pass the intersection without danger of collision." See footnote 1, supra.

The testimony of the three who were eye witnesses to the accident, as well as that of appellant's expert witness Bentley, has already been summarized. We have given consideration to the testimony of each of these witnesses as well as to all other evidence in passing upon these factual insufficiency points. Garza v. Alviar, Tex.Sup. Ct., 395 S.W.2d 821. Brown testified that he waited in the turn lane on Highway 181 for several cars in the north bound roadway to pass then when no more cars were in sight he started his left turn, eased up to the highway, looked to his right and saw no approaching cars, and proceeded across Green verified Brown's statement about his waiting before making his turn, and about his entry into the roadway in the manner testified to by Brown. Their testimony also coincided on the foggy conditions, the limited visibility, the wet condition of the pavement, and the fact that no north bound cars were in sight when Brown entered the intersection. Green and Brown both agreed that the truck was well in the intersection before the lights of the car became visible through the fog about 400–450 feet distant, coming at a rapid rate of speed which Green estimated at about 70 miles per hour. Photographs showed extensive damage to the front end of the car. All testimony of speed and distance were estimates only.

Appellant, in his argument under these and other legal and factual insufficiency points, relies strongly on his hypothesis that matters of time, distance, and speed were established conclusively by the testimony of the witness Bentley. In his brief, appellant refers to the following as known physical or established facts: (1) that the truck entered the intersection 3.273 seconds before the collision; (2) that appellant's speed was 45.1 miles before application of brakes; (3) that appellant's car

was 185 feet from the intersection when the truck entered; and (4) that the speed of the car at impact was 27.55 miles per hour. It is apparent from a review of all of the evidence that these conclusions of Bentley, a non-eyewitness of the accident, were in conflict with the testimony of Brown and the witness Green.

Opinion evidence does not establish any material fact as a matter of law. It is but evidentiary, and is not binding upon the trier of facts. The mere qualification of a witness as an expert does not cut off the fact finder from exercising considerable judgment of his own about how far the witness' opinions are to be relied on. Broussard v. Moon, Tex.Sup.Ct., 431 S.W.2d 534; Hood v. Texas Indemnity Ins. Co., 146 Tex. 522, 209 S.W.2d 345; Luttes v. State, 159 Tex. 500, 324 S.W.2d 167, 189.

In applying the test of the ordinarily prudent person given in the court's instruction to all of the evidence in the record, the jury could very well reach the view that when Brown eased up to the intersection and, upon looking to his right, saw no cars approaching, he would reasonably have concluded, as an ordinarily prudent person acting with ordinary care, that he could pass the intersection without danger of collision. The jury was justified from the evidence in finding, not only that Brown did not fail to yield the right-of-way, but that appellant, who obviously entered the intersection after the truck was well within it, did fail to yield, that such failure was negligence, and a proximate cause of the collision. Such answers find support, legally and factually, in the evidence.

Appellant argues, concerning the proximate cause issues as to right of way, excessive speed, and look-out that he was not required to anticipate that the truck driver would fail to yield the right of way, or that he would proceed into and across the highway without first stopping at the entrance to the intersection, citing Smalley v. Mc-Murray, Tex.Civ.App., 427 S.W.2d 118, n.

w. h.; Taylor v. Brooks, Tex.Civ.App., 392 S.W.2d 878, wr. ref. n. r. e.; Cox v. City of Amarillo, Tex.Civ.App., 391 S.W.2d 494, wr. ref. n. r. e., and other authorities. Appellant's argument is based in part on his statement that "the evidence conclusively establishes that Defendant failed to yield and that such failure was a proximate cause of the collision, and because there is no evidence (that) Plaintiff had a duty to anticipate the negligence of Defendant * * *"

We recognize that it is a well settled principle of law that a person is not bound to anticipate negligence or unlawful conduct on the part of another. De Winne v. Allen, 154 Tex. 316, 277 S.W.2d 95; authorities cited above. While the evidence of appellant and witness Bentley on the one hand, and the truck driver and Green on the other, created fact issues as to the negligence of the truck driver Brown, the jury failed to find any such negligence. Although one is not required to anticipate negligent or unlawful conduct on the part of another, neither is one entitled to close his eyes to that which could have been observed by a person of ordinary prudence similarly situated. Lynch v. Ricketts, 158 Tex. 487, 314 S.W.2d 273; De Winne v. Allen, 154 Tex. 316, 277 S.W.2d 95; Strawder v. Pantoja, Tex.Civ.App., 372 S.W.2d 246, wr. ref. n. r. e.

Special Issue No. 5, inquiring whether at the time Brown entered the intersection appellant was approaching the intersection so close as to constitute an immediate hazard, in our opinion did not constitute a comment on the weight of the evidence, as is contended in appellant's point of error No. 14. The issue was submitted in the terms of Art. 6701d Sec. 73 (a), with instructions (footnote 1, supra) which are not here attacked by appellant.

All of appellant's points of error concerning the right of way issues and the jury's findings thereon are overruled.

Point 25 is to the effect that the evidence conclusively established that Brown failed to keep a proper look-out, which is a no evidence point. By point 26, appellant contends that the jury's answer to special issue No. 3, in which they refused to find that Brown failed to keep a proper look-out was against the overwhelming weight and preponderance of the evidence. We have already summarized and discussed the evidence, much of which also concerns special issue No. 3, and find against appellant on these contentions. Points 25 and 26 are overruled.

Appellant's other points being Nos. 15, 16, 17, 18, 19, 20, 21, 22, 23, and 24 are addressed to the jury's answers to special issues Nos. 12 and 13 finding that appellant was driving at an excessive rate of speed, which was a proximate cause of the accident, and Nos. 14 and 15, finding that appellant failed to keep a proper look-out, which was a proximate cause of the accident. Appellant contends that there was no evidence, and insufficient evidence factually, to support the jury's answers to these issues.

Appellant in his brief groups his argument on the speed and look-out points with the questions of the rights and duties in regard to right of way. The evidence we have already summarized and discussed also applies to appellant's contentions on the excessive speed and look-out issues. We have considered all of such evidence, since appellant raises points of factual insufficiency as well as of legal insufficiency. We find the evidence as a whole to be legally sufficient and factually sufficient to support the jury's findings that appellant on the occasion in question (12) was driving at a rate of speed in excess of what an ordinarily prudent driver in the exercise of ordinary care would have driven under the same or similar circumstances, (13) which was a proximate cause of the collision, and (14) that appellant failed to keep a proper look-out (15) which was a proximate cause of the collision.

The judgment is affirmed.

Affirmed.